UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIR T. ISLAM AND<br>MIR S. ISLAM,<br>    *Plaintiffs,*<br>v.<br>LEE'S MOTORS, INC. AND<br>TOYOTA MOTOR CREDIT<br>CORPORATION,<br>    *Defendants.* | FIRST AMENDED<br>COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>No: 17-cv-03995<br>(DLI)(VMS) |

## INTRODUCTION

1. Plaintiffs Mir T. Islam and Mir S. Islam, individual consumers, bring this action for money damages, injunctive relief, and declaratory judgment, seeking redress for unlawful practices relating to their purchase and financing of an automobile.

2. Plaintiffs allege violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), *et seq.*, the New York Motor Vehicle Retail Instalment Sales Act, N.Y.P.P.L. § 301 *et seq.*, and New York General Business Law § 349.

3. Plaintiffs also assert a common law claim for fraud.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA).

5. This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

6. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1

7. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and the Defendant auto dealership maintains offices, transacts business, and is otherwise found in this district.

## THE PARTIES

8. Plaintiff Mir T. Islam ("Mir T.") is and at all relevant times has been a resident of Queens, New York.  Mir T. was 18 years old at the time of the transaction at issue in this litigation.

9. Plaintiff Mir S. Islam ("Mir S."), who is Mir T.'s father, is and at all relevant times has been a resident of Queens, New York.

10. Lee's Motors, Inc., which does business as Lee's Toyota ("the Dealership") is a an automobile dealership located in Queens, New York.

11. The Dealership is a domestic limited liability company registered with the New York Secretary of State.

12. Defendant Toyota Motor Credit Corporation ("TMCC") is a financial institution incorporated under the laws of California and took assignment of both the RIC and the Lease Agreement.

## FACTS

13. Mir T. is a former customer of the Dealership, having entered into a Motor Vehicle Lease Agreement with the Dealership on or about May 24, 2016 in connection with the lease of a new, 2016 Toyota RAV4.  That prior transaction is not at issue in this litigation.

14. In a separate transaction, regarding a different vehicle, Mir S. came to the Dealership in late May or early June of 2016 and made a down payment on a vehicle.

15. Shortly thereafter, also in late May or early June of 2016, Mir S. returned to the Dealership and filled out a credit application in connection with the transaction at issue (i.e. not in connection with Mir T.'s prior transaction)

16. Mir S. did not enter into a retail installment contract ("RIC") or other financing agreement at that time he made the down payment, nor at the time he filled out the credit application.

17. Also in late May or early June of 2016, a friend of Mir S., Michael Pellet, came to the Dealership to fill out a credit application in order to potentially serve as a co-signor/guarantor for Mir S.

18. On July 1, 2016, Mir S. returned to the Dealership, having been informed that the vehicle he wanted was available and on that date he intended and attempted to enter into a finance agreement with the Dealership in connection with the purchase and financing of a new 2016 Toyota Tundra (the "Vehicle").

19. The loan terms were not disclosed in writing to Mir S. or Mir T. prior to financing.

20. Rather, on July 1, 2016, Mir S. signed an electronic signature pad several times at the Dealership's request.

21. The pad did not contain any loan contract language or loan terms, and was approximately 3"x 5" (three inches by five inches), containing only a blank area on which to sign.

22. Upon information and belief, the Dealership applied these digital signatures to a Retail Instalment Contract ("RIC") that it subsequently assigned to Defendant Toyota Motor Credit Corporation.

23. The Dealership did not provide the RIC to Mir S. or Mir T. prior to consummation of the credit transaction, nor at the time of the credit transaction, nor at any other time prior to this litigation.

24. Mir T. was not at the Dealership on July 1, 2016 and never agreed to be part of the transaction at issue in this litigation, nor did Mir S. ever attempt to involve Mir T. in the transaction.

25. Moreover, the RIC shows Michael Pellet as the primary "buyer" and purports to be signed by Mr. Pellet on July 1, 2016.

26. Mr. Pellet was not at the Dealership on July 1, 2016.

27. Rather, as set forth above, he visited the Dealership only once, in late May or early June of 2016 and did not at that or any other time sign the RIC, via signature pad or otherwise.

28. Indeed, Mr. Pellet did not sign any documents with a signature pad and further reports that he did not sign any documents other than the credit application he filled out in late May or early June.

29. Thus, Mr. Pellet's "signature" on the RIC (which states in its header that it is a "copy of the customer completed signed electronic form") is a forgery.

30. After reviewing an invoice from TMCC that listed Mir T. as the borrower, Mir S. and Mir T. repeatedly asked the Dealership to correct the RIC to list Mir S. as the borrower.

31. The Dealership promised to do so, but failed to do so.

32. Michael Pellet called TMCC on approximately July 29, 2016 and informed TMCC that it had identified the wrong person as owner of the Vehicle inasmuch as he was

receiving monthly bills but had filled out a credit application only in order to be a guarantor/co-signer.

33. Mir S. and Mir T. subsequently obtained a copy of the RIC from TMCC.

34. The RIC reveals that the Dealership, in addition to listing Mir T. as the co-buyer, unbeknownst to Plaintiffs, added $2,500 for "optional mechanical breakdown protection".

35. The Vehicle Invoice for the transaction is dated July 1, 2016 and correctly lists Mir S. and Michael Pellet as the buyer.

36. In connection with this litigation, Defendants have produced a "Contract" dated June 28, 2016. ECF Doc. 14-4.

37. The Contract lists Mir S. and no one else, as the buyer.

38. The Contract states "CUSTOMER DOES NOT REQUIRE LEE'S TOYOTA TO ASSIST IN FINANCING THIS ORDERED VEHICLE" (all caps in original).

39. In connection with this litigation, Defendants have also produced a "Credit Application" dated June 16, 2016 and purportedly signed by Mir S. Islam and Michael Pellet on that date. (ECF Doc. 14-6)

40. The document includes handwritten personal information for both Michael Pellet and "Mir Islam" (no middle initial), including *inter alia* (on the unredacted version) Mir T. Islam's social security number.

41. As stated above, Michael Pellet was not at the dealership at all on June 16, 2016, but rather came to the Dealership only once, several weeks prior.

42. Mir T. Islam did not sign any such document or provide any information to the Dealership in connection with the transaction at issue (although the Dealership was in possession of Mir T.'s information as a result of his prior lease).

5

43. The handwriting that appears on the document is not Mir S. or Mir T.'s handwriting.

44. Mir S. does not know Mir T.'s social security number, does not have easy access to it, and did not at any time provide it to the Dealership.

45. Neither Mir S. nor Mir T. know whose handwriting is on the form.

46. The purported signature for Mir S. on the "Credit Application" dated June 16, 2016 is not his signature.

47. While Mir S. completed a credit application at the Dealership, he did so several weeks prior to June 16, 2016 in late May or early June.

48. At all relevant times (and even as of the date of the filing of the instant First Amended Complaint), TMCC has demanded monthly loan payments from Mir T. and has refused to correct the RIC and related credit reporting to reflect the correct borrower.

49. The account shows on Mir T.'s credit report and has significantly lowered his credit score and caused a variety of credit related harms.

50. For example, and without limitation, Mir T has been denied financing for a tablet by T-Mobile (August 2017); denied financing by CredCo, Chase and Santander for financing of an automobile (February 2017); denied financing by Barclays for financing of a new iphone (September 2017); denied financing by Sallie Mae for a student loan (August 2016) (resulting in a loan that includes a co-signer and a materially higher rate than would otherwise be the case).

51. Because the loan is incorrectly listed in his son's name, Mir S. Islam has been denied the opportunity to use his regularly monthly payments of $672 per month (which he continues to make even though Defendants refuse to list the loan in his name), to improve his

credit, and has been forced to involve his son in his father's financial affairs – a situation he did not agree to and which he finds highly objectionable.

52. Defendants misconduct, as set forth above, has also caused both Plaintiffs emotional distress, aggravation, stress, and other compensable pain and suffering.

## COUNT I
## TRUTH IN LENDING ACT, 15 U.S.C. §§1601 et seq. ("TILA")

53. Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

54. The Dealership regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

55. The Dealership is a creditor within the meaning of the TILA, 15 USC § 1602(f) and the relevant implementing regulations set forth in Regulation Z (e.g. § 226.2(a)).

56. TMCC is an assignee of the Dealership and has demanded and accepted payments on the RIC on that basis.

57. As such, TMCC is an assignee pursuant to TILA, 15 U.S.C. § 1641(a) and the relevant implementing regulations found in Regulation Z.

58. The RIC lists a motor vehicle, an article of personal property, as collateral.

59. The RIC is a written agreement payable in more than four installments.

60. The RIC is a consumer credit transaction within the meaning of the TILA, 15 USC § 1602, and Regulation Z § 226.2.

61. The finance charges indicated on the RIC greatly exceed $1,000.00.

62. Prior to the purported consummation of the RIC, neither Plaintiff was provided with the TILA disclosures in a form that he, as a consumer, could keep, nor in any form at all, in violation of both § 1638(a) and § 1638(b)

63. Indeed, as set forth above, the Dealership did not provide the disclosures at any time prior to the filing of this litigation.

64. Plaintiffs were not provided disclosures that conform with the obligations under the TILA and Regulation Z inasmuch as the costs of credit, including the true cash price, APR, amount financed, finance charge, and monthly payment were not timely, accurately and clearly and conspicuously disclosed to the consumer, whether "consumer" is deemed to refer to Mir T., Mir S. or both, in violation of 1638(a) and (b).

65. The optional mechanical breakdown protection fee of $2,500 was inserted into the RIC (unbeknownst to Plaintiffs) incident to the extension of credit and is, therefore, an undisclosed "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

66. As a result of Defendants' failure to include this $2,500 as a finance charge, the sale price, finance charge, amount financed, and APR disclosed in the RIC are all materially misstated, in violation of TILA § 1638(a) and Regulation Z §226.18.

67. Had the RIC disclosures been made prior to consummation, neither Plaintiff would have proceeded with the transaction and the harms set forth herein would not and could not have occurred.

68. Indeed, neither Mir S. (who is not listed as the borrower), nor Mir T. (who was not present) could have plausibly proceeded.

69. Moreover, had the RIC disclosures been made prior to consummation, Plaintiffs would have become aware of the $2,500 optional mechanical breakdown protection fee improperly inserted into the RIC, and would not have proceeded or incurred that charge.

70. TMCC is liable for these violations pursuant to TILA, 15 U.S.C. 1641, governing TILA liability of assignees.

71. As a result of these TILA violations, Plaintiffs are entitled to actual damages, statutory damages, costs and attorney's fees.

## COUNT II
## NEW YORK MOTOR VEHICLE
## RETAIL INSTALLMENT SALES ACT § 302, et seq. (MVRISA)

72. Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

73. The Dealership is a "retailer seller" within the meaning of MVRISA § 301(3).

74. The transaction as described above involved a "retail installment sale" within the meaning of MVRISA § 301(4).

75. MVRISA § 302(3) requires the "seller" to "deliver to the buyer, or mail to him at his address shown on the [RIC], a copy of the [RIC] signed by the seller.

76. The Dealership did not do so.

77. MVRISA § 302(4) requires that the RIC "contain the names of the seller and the buyer".

78. The RIC in question did not contain Mir S.'s name, and instead improperly listed Mir T. as the buyer.

79. MVRISA expressly incorporates all TILA disclosure requirements, providing, in addition to all of its other requirements that "[a]ll items required to be disclosed by the act of

9

congress entitled "Truth in Lending Act" and the regulations thereunder, as such act and regulations may from time to time be amended." § 302(5)(1).

80. As set forth above, Defendants have violated numerous TILA provisions.

81. MVRISA also prohibits a seller from having a buyer sign a RIC "when it contains blank spaces to be filled in after it has been signed." § 302(8).

82. The signature pad procedure employed by the Dealership with regard to Mir S., set forth above, violates this provision.

83. As set forth above, none of these disclosures were provided at the time of consummation of the sale of the Vehicle.

84. As set forth above, the RICs provided to Plaintiffs, to the extent they were provided at all, were in gross violation of TILA's requirements.

85. The violations set forth herein were both knowing and willful.

86. Defendants have had ample opportunity to correct the violations and have failed to do so.

87. For all of the reasons stated herein, under MVRISA § 307, Defendants, including TMCC, are barred from recovering any credit service charge, delinquency, or collection charge on the RIC and Plaintiffs are entitled to costs and attorney's fees.

### COUNT III
### NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE CONSUMER PRACTICES)

88. Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

89. Each of the deceptive acts and practices set forth above, including but not limited to the electronic signature pad procedure employed with regard to Mir S., the forging of certain

10

signatures, and the insertion of additional fees into the RIC, constitute violation of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

90. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

91. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

92. In this regard, it is notable that Mir T.'s prior transaction with the Dealership, likewise involved use of the electronic signature pad without the ability to review the loan terms prior to consummation.

93. The Dealership's conduct and statements were materially misleading.

94. As a result of these violations of NYGBL § 349, Plaintiff suffered actual damages as set forth above.

95. The Dealership's violations were willful and knowing and committed in bad faith.

96. For these reasons, Plaintiffs are entitled to actual damages as set forth above, three times the actual damages up to $1000, punitive damages, attorney's fees, costs and declaratory judgment that the Dealership's practices are deceptive in violation of § 349.

## COUNT IV
## FRAUD

97. Plaintiffs repeat, re-allege and incorporate by reference the foregoing paragraphs.

98. As set forth above, the Dealership defrauded Plaintiffs, *inter alia*, by obtaining Mir S.'s signature for use on a RIC listing Mir T. as the buyer, using the electronic signature pad

11

procedure described above to insert an additional $2,500 charge into the RIC without Plaintiffs' knowledge, and forging certain signatures.

99. This conduct and the related documents are thus materially false.

100. The Dealership intended to deceive Plaintiffs.

101. Plaintiffs believed and justifiably relied upon the Dealership's representations, *i.e.* Mir S. had no reason to know or believe that Mir T. was being substituted into the transaction documents for Mir S. and Mir T., nor that additional fees never previously discussed would be inserted into the RIC.

102. Moreover, Mir S. believed that the Dealership would correct the misstatement as it promised to do.

103. Had the Dealership been truthful about the sales terms and the contents of the RIC and had the Dealership not made these fraudulent misrepresentations, neither Mir S. nor Mir T. would have gone forward with the transaction.

104. As a result of such reliance, Plaintiffs sustained actual damages (including both pecuniary and non-pecuniary damages).

105. Moreover, the Dealership's conduct was egregious on every level; it was a virtually larcenous scheme.

106. As a result of Plaintiffs' reasonable reliance upon the Dealership's misrepresentations, Plaintiffs are entitled to actual damages as set forth above, punitive damages, and costs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants as follows:

a. On COUNT I, TRUTH IN LENDING ACT, judgment against Defendants for statutory damages, actual damages, attorney's fees, litigation expenses and costs,

    declaratory judgment that they have violated TILA and Regulation Z, and such other or further relief as the Court deems appropriate;

b. On COUNT II, VIOLATIONS OF MVRISA, declaratory judgment against Defendants that they have violated MVRISA and an order barring recovery of any credit service charge, delinquency, or collection charge under the RIC and disgorging all such monies paid to date, as well as reasonable attorney's fees and costs of the action;

c. On COUNT III, NYGBL § 349, judgment against Defendants, injunctive relief, actual damages, three times the actual damages up to $1,000, punitive damages, costs and reasonable attorney's fees, declaratory judgment that Defendants have engaged in deceptive conduct, and such other or further relief as the Court deems appropriate;

d. On COUNT IV, FRAUD, judgment against Defendants, actual damages, punitive damages, and costs;

e. Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

Dated: November 10, 2017

                                        Respectfully Submitted,

                                        */s/Daniel A. Schlanger*
                                        Daniel A. Schlanger
                                        Kakalec & Schlanger, LLP
                                        85 Broad Street, 18th Floor
                                        New York, New York 10004
                                        T: 212.500.6114
                                        F: 646.612.7996
                                        dschlanger@kakalec-schlanger.com

                                        *Attorneys for Plaintiff*