**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MIR T. ISLAM and MIR S. ISLAM,

                                    *Plaintiffs,*

v.

LEE'S MOTORS, INC.
and

TOYOTA MOTOR CREDIT CORPORATION

                                    *Defendants.*

Index: 17-cv-3955 (DLI)(VMS)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

March 5, 2018

Daniel A. Schlanger
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, NY 10004
T. 212.500.6114
F. 646.612.7996
dschlanger@kakalec-schlanger.com

Brian K. Herrington
(*pro hac vice* in process) (Of counsel)
Herrington Law, PA
1520 N. State Street
Jackson, MS 39202
T:  601.235.9943
F:  601.235.9947
brian@herringtonlawpa.com

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTS AND PROCEDURAL POSTURE................................................................. 3

III.  ARGUMENT ........................................................................................................... 5

   A.  The Dealership's Arguments With Regard To Mir T. Islam Fail ....................... 6

   B.  The Dealership's Arguments With Regard To Mir S. Islam Fail ....................... 9

      1.  The Dealership's Course of Conduct Demonstrates Its Intent To Enter Into A Financed Vehicle Purchase With Mir S. .......................................................................... 10

      2.  Plaintiffs' TILA Claim Is A "Blank Contract" Claim, Not A Traditional "Forgery" Claim ....................................................................................................... 15

   C.  Defendant's Defenses To Plaintiff's State Law Claims Are Meritless............................. 16

      1.  New York Motor Vehicle Retail Installment Sales Act ................................ 16

      2.  GBL § 349 ..................................................................................................... 16

      3.  Fraud................................................................................................................ 19

   D.  The Dealership's Joinder Argument is Meritless............................................. 20

IV.  CONCLUSION ...................................................................................................... 23

## I.     PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law, by and through counsel, in opposition to Defendant Lee's Motor's Inc.'s motion to dismiss.  ECF Doc. 25.[1]

Defendant Lee's Motors, Inc. ("Lee's Motors", "the Dealership") failed to make loan disclosures to Mir S. Islam in connection with the purchase of his vehicle.  Instead, after the Dealership accepted his down payment, and provided him with a vehicle invoice summarizing the financing in question, as well as a separate contract for the purchase of the vehicle, the Dealership had him sign a digital signature pad and applied those signatures to a retail instalment contract ("RIC").  Lee's Motors did not provide Mr. Islam with any opportunity to review the retail installment contract prior to consummation.  This is a textbook TILA violation that goes to the core purpose of the statute, which is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 528-529, (E.D.N.Y. 2006) (quoting 15 U.S.C. § 1601(a)).

To make matters worse, Lee's Motors – whether on purpose or inadvertently – inserted the name of Mr. Islam's son (Mir T. Islam), a former customer, into the RIC.  Lee's Motors then repeatedly refused to correct the issue.  As a result, to this day, Mir T. Islam, a 20-year old college student continues to be billed for the Vehicle and the loan appears on his credit.  Mir S. Islam, for his part, continues to make regular payments on the loan, despite the fact that it is his

---

[1] Defendant Toyota Motor Credit Corp.("TMCC")  has joined Lee's Motors' motion.  ECF Doc. 26.  Because TMCC did not submit its own memorandum and merely "piggybacks" on the Dealership's motion, I refer throughout this brief to the "Dealership's" motion, etc.  The reasons for denial of the Dealership's motion set forth herein, apply equally to the Dealership and TMCC.

son being billed.  Neither the loan nor the regular payments are reflected on Mir S.'s credit report.   The result is that Mir T.'s credit is damaged by the false appearance that he is badly overextended – resulting in multiple credit denials – whereas Mir S.'s credit is damaged by the inability to establish a history of regular payments.

With regard to Mir T. Islam, the Dealership argues that because he does not allege that he was "a signatory to a valid contract" (MOL at p. 5) his TILA claims fail.  However, Courts have repeatedly held that where, as here, Defendants have treated a consumer as obligated on a contract, they may not avoid TILA liability on grounds that the consumer is not obligated (and therefore not entitled to the statute's protections).  For this reason, the Dealership's arguments with regard to Mir T. Islam (who continues to be named in the contract as an obligor, continues to receive bills from TMCC, continues to this day to be subjected to credit reporting on the account to his detriment, etc.) must fail.

With regard to Mir S. Islam, Defendant argues that it has no TILA obligations because Mir. S. denies being able to review the RIC at the time he was asked to sign.  Tellingly, Defendant provides no case law or other support for the startling and circular proposition that a Dealership may avoid TILA liability by failing to disclose the loan terms to the consumer at the time it takes the consumer's signature on the retail instalment contract.  The argument is even less tenable here, where a consumer enters into a vehicle purchase contract, is provided with an invoice summarizing the loan (*i.e.* providing the number of payments, the amount of the payments and the assignee); makes a down payment, drives off the lot with the vehicle, makes the required monthly payments,  and repeatedly requests that the loan documents be corrected to include his name as the borrower.

2

To compare this situation to one in which a vehicle is stolen by an identity thief and the victim, entirely uninvolved in the purchase, complains that he or she was not provided with a loan disclosure on a transaction for which all parties agree the consumer has no obligation is nonsensical.  Notably, cases involving traditional identity theft/forgery have typically pointed to the absence of exactly those factors present in the case at bar.

Indeed, it is black letter law that a dealership is liable under the statute where – as here – it has a consumer sign a retail instalment contract "in blank."

## II.     FACTS AND PROCEDURAL POSTURE

Plaintiffs Mir S. Islam and Mir T. Islam are father and son.  Mir T. Islam was 18 years old at the time of the transaction in question.  First Amended Complaint (ECF Doc. 19) ("FAC") at ¶¶ 8-9.

Mir S. "came to the Dealership in late May or early June of 2016 and made a down payment on the Vehicle" the financing of which is the subject of the instant litigation. *Id.* at ¶¶ 14-15.  He, along with a co-borrower also filled out credit applications. *Id*. at ¶ 15.

"On July 1, 2016, Mir S. returned to the Dealership, having been informed that the vehicle he wanted was available and on that date he intended and attempted to enter into a finance agreement with the Dealership in connection with the purchase and financing" of the vehicle. *Id.* at ¶ 18.

The Vehicle Invoice for the transaction is dated July 1, 2016, and correctly lists Mir S. and the co-borrower, Michael Pellet, as the buyers. *Id.* at ¶ 35.  The Vehicle Invoice states, *inter alia*, "Payments        72 @691.474  49805".[2]

---

[2]   The Vehicle Invoice is discussed at paragraph 35 of the FAC, but the financing terms set forth on its face are not recited in the FAC.  The parties agree, however, that documents such as this,

Defendants' have also produced a vehicle Contract listing Mir S. as the buyer (*id.* at ¶ 37) as well as a "Credit Application" listing Mir. S. and Michael Pellet as co-borrowers. *Id.* at ¶ 39.

Mir S was not provided with a RIC at the time the transaction occurred. Instead, Mir S, at the Dealership's request, signed a blank electronic signature pad several times. These digital signatures were, upon information and belief, subsequently applied by the dealership to a RIC that was then sent on to TMCC. FAC at ¶¶ 20-22.

Plaintiffs subsequently obtained a copy of the RIC from Defendant Toyota Motor Credit Corp, and learned that Mir T (the son) rather than Mir S (the father) was listed on the RIC as the co-buyer. *Id.* at ¶¶ 33-34.[3]

"At all relevant times (and even as of the date of the . . . First Amended Complaint), TMCC has demanded monthly loan payments from Mir T. and has refused to correct the RIC and related credit reporting to reflect the correct borrower." *Id.* at ¶ 48.

Prior to this litigation, Plaintiffs "repeatedly asked the Dealership to correct he RIC to list Mir S. as the borrower." *Id.* at ¶ 30.

"The Dealership promised to do so, but failed to do so." *Id.* at ¶ 31.

Mir S. continues to make regularly monthly payments of $672 per month for the Vehicle.

---

which are referenced in the FAC, are deemed incorporated by reference. See, Def. MOL at 4. In light of the Vehicle Invoice, which is dated the same date as the RIC (July 1, 2016), and which references and sets forth terms of financing, Defendant's claim that no "documents aside from the RIC give rise to TILA claims, as they are barred by the one-year statute of limitations" is incorrect. Def. MOL at ¶ 8.

[3] The dealership had Mir T.'s identifying and contact information in its system as he previously purchased a different vehicle from the Dealership. See, *e.g.* Complaint at 13.

4

The RIC reflects  that "the Dealership, in addition to listing Mir T. as the co-buyer unbeknownst to Plaintiffs, added $2,500 for 'optional mechanical breakdown protection'. *Id.* at ¶ 34.

"[H]ad the RIC disclosures been made prior to consummation, Plaintiffs' would have become aware of the $2,500 optional mechanical breakdown protection fee improperly inserted in the RIC, and would not have proceeded or incurred that charge." *Id.* at ¶ 69.

Defendants' conduct has harmed Mir T. (whose credit score has been significantly lowered as a result of a second and significant vehicle loan appearing on his credit – resulting in multiple credit denials).  FAC at ¶¶ 49-50 (detailing credit-related harms).

Defendants' conduct has also harmed Mir S. Islam, who has been unable to use his regular, $672 per month payments "to improve his credit, and has been forced to involve his son in his father's financial affairs" against Mir S.'s will. *Id.* at ¶ 51.

In addition, Defendants' misconduct has "caused both Plaintiffs emotional distress, aggravation, stress, and other compensable pain and suffering." *Id.* at ¶ 52.

Plaintiff brings claims against the Dealership and assignee TMCC for violation of the Truth in Lending Act, 15 U.S.C. 1601, et seq. ("TILA"); the New York Motor Vehicle Retail Installment Sales Act, Sec. 302 et. seq. ("NYMVRISA"); New York General Business Law Sec. 349 and Fraud.

## III.    ARGUMENT

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

TILA requires disclosure by the creditor "to the person who is obligated on ... a consumer credit transaction." 15 U.S.C. § 1631.

Auto loan disclosures are governed, *inter alia*, by TILA Sec. 1638(a), which requires accurate disclosure of numerous items related to the cost of credit, e.g. the amount financed, the finance charge, the APR, etc.  Section 1638(b) states that the disclosures must be made "before the credit is extended."  Regulation Z clarifies that this means before the transaction is "consummated".  See, e.g. *Fairley v. Turan-Foley Imports, Inc*., 65 F.3d 475, 480 (5th Cir 1995) (citing, *inter alia*, 12 C.F.R. 226.1(a)).  "Consummation means the time that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226.2(a)(13).

 TILA is a strict liability statutes and is to be liberally construed in light of its remedial purpose.  *Clement v. Am. Honda Fin. Corp.,* 145 F. Supp. 2d 206, 210 (D. Conn. 2001) (collecting authorities).

**A.  The Dealership's Arguments With Regard To Mir T. Islam Fail**

The Dealership contends that "[a]bsent any allegation that he was a signatory to a valid contract, Mir T. was not entitled to TILA disclosures – and Lee's Motors therefore cannot be held liable for his claimed TILA damages."  Def. MOL at 5.

In support of this proposition, Lee's Motors cites a number of cases holding that where the underlying contract is forged, the consumer has no obligation to pay on the loan and therefore no right to TILA disclosures.  *Id.* (citing, *inter alia Monogram Credit Card Bank of Georgia v. Morris*, No. 29701/2001, 2002 WL 31360695 at *6-7 (N.Y. Civ. Ct. May 10, 2002)).

The Dealership's contentions fail to address the numerous cases that provide the pertinent exception to this general rule, and hold that TILA liability nonetheless attaches where – as here –

the creditor continues to treat a consumer as obligated after being informed that the consumer was not a proper party to the contract at issue.

For example, as this Court held in *Belmont v. Associates Nat. Bank (Delaware)*,119 F. Supp.2d 149, 163-164 (E.D.N.Y. 2000), "[g]iven the remedial nature of TILA, Congress's intent to protect consumers, and the courts' mandate that TILA be liberally construed, . . . the term 'obligor[s]' must necessarily be construed to include those whom the creditor claims are obligors, as well as individuals who are in fact obligors in the contract law sense."[4] The Court noted in this regard that "[t]he need for such protections are particularly illustrated by. . .  [the creditor's] ability to harm [the consumer's] credit even if he is not an obligor . . . . [w]hether or not Peter Belmont is actually obligated on the account has no bearing on whether he has standing to bring this action under TILA." *Id.*

Similarly, in *Carter v. Atchley Ford, Inc.*, 2002 U.S. Dist. LEXIS 6095 (D. Neb. Feb. 20, 2002), an auto fraud case, the Court, citing *Belmont*, held that:

> Although Martha Carter immediately alerted both Atchley and FMCC of the mistake, it was not until the Defendants had proof positive of Dale Carter's fraudulent machinations that Atchley offered to rescind the contract bearing Martha Carter's name. . . Having found that Martha Carter is entitled to the protections of the Act, the Court finds as a matter of law that Atchley is liable to Martha Carter for violating TILA by failing to provide her with the disclosures required under 15 U.S.C. § 1638(a).

*Id*. at *9-11.

---

[4] *Belmont* dealt with credit card billing errors under a different section of TILA " (§ 1666(b)), which applies to "obligors."  As noted above,  the section at issue here is 15 U.S.C. § 1631, which provides for disclosure "to the person who is obligated on ... a consumer credit transaction." The difference in nomenclature ("obligors" versus "the person who is obligated") is immaterial.

7

The argument in the case at bar is even stronger than in *Carter*, as it was Lee's Motors itself that switched out the two Plaintiff's names and refused to take any remedial action; and even now TMCC has knowingly continued to demand payment from Mir T. with knowledge that he was not a participant.

*Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky 2003) is also on point.  In *Stafford*, the Court found that TILA applied where a consumer alleged he had not entered into the subject transaction because "the Bank has treated and continues to treat [plaintiff] as the obligor." *Id.* at 791. Tellingly, the Court noted that "[c]learly, the Bank has treated and continues to treat Stafford as the obligor. The Bank sent Stafford numerous statements in the form of letters claiming that he owed in excess of $700.00." *Id.*  So too, here.

The cases cited by Lee's Motors are not contrary.  Instead, they point to precisely those facts not present in the case at bar.

For example, in *Monogram Credit Card Bank of Georgia v. Morris*, 2002 WL 31360695 (N.Y. Civ. Ct. May 10, 2002) (Def. MOL at 5), it was uncontested that the bank "issued the credit card not to [the consumer raising the TILA claim], but to an imposter who obtained the credit card using [the consumer's] identification and forging [his] signature." *Id.* at ¶ *7. Critically, far from continuing to bill the consumer – as is the case here with Mir T -- the bank in Monogram had "conceded that a third party fraudulently obtained the credit card by using defendant's identity and does not seek to collect the unpaid credit card balance from [the consumer]." *Id.* at ¶ *1.

Similarly, the Dealership relies upon *Orlosky v. Empire Sec. Sys., Inc.*, 230 A.D.2d 401 3d Dept. 1997) (Def. MOL at 5), for the proposition that "[b]ecause there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract existed. . . and the

8

forged RIC could not form the basis for TILA protection." *Id.* at ¶ 403.  However, *Orlosky*, like *Monogram*, emphasized that the original creditor had quickly conceded that the consumer had no obligation to pay, noting that the creditor had dismissed its claims against the consumer for non-payment on a security system installment contract and that "[a]fter the forgery was discovered, [the original creditor] agreed to remove the system and repay [the assignee] the amount it received on the assignment of the loan."

In contrast, Defendants herein have done their utmost to continue to hold Mir T. responsible for the loan.  See, e.g. FAC at ¶¶ 30, 48.[5]

### B.  The Dealership's Arguments With Regard To Mir S. Islam Fail

Lee's Motors contends that Mir S.'s claims fail for the same reasons as it advances with regard to Mir T.  Def. MOL at ¶ 8.

With regard to Mir T. we have seen that this argument fails.  With regard to Mir S. their arguments fare no better, although for slightly different reasons.

First, just as the caselaw accounts for situations where a consumer – despite not having signed the contract – is treated as obligated, the caselaw also accounts for situations where the parties' course of conduct make clear their intent to enter into a financed transaction. To wit, where – as here – a consumer is invoiced for the vehicle and that invoice references the financing; the consumer makes his down payment to the Dealership, signs a Purchase Agreement, signs as instructed with regard to the finance agreement (even if the terms are not disclosed to him therein as required under TILA), is then given possession of the vehicle;

---

[5] Consistent with the allegation of "repeated" requests set forth in the FAC (FAC at ¶ 30), Plaintiff's recent interrogatory responses state that Mir T. and Mir S. Islam called the dealership approximately 10 times and visited the dealership 10 times in person in their attempt to have the loan paperwork corrected.

continues to make payments on the vehicle in the monthly amounts indicated on both the invoice and RIC; and acknowledges his obligation (indeed, repeatedly requests the paperwork to reflect it), TILA applies.

Moreover, as set forth below, Defendant's entire conceptualization of Mir S.'s TILA claim as based on traditional forgery is simply inapt.  Rather, Mir S.'s allegation that he signed a blank digital signature pad and thus was not shown the material loan terms prior to consummation is simply a digital variant of the traditional "blank form" cases in which it is well-established that a Dealership incurs TILA liability by having the consumer fill out a retail instalment form contract in which the material terms have been left blank.

### 1.  The Dealership's Course of Conduct Demonstrates Its Intent To Enter Into A Financed Vehicle Purchase With Mir S.

Courts have repeatedly held that TILA's disclosure obligations apply where, even absent a binding signature on the RIC,  the parties have manifested through conduct their intent  to enter into a transaction pursuant to which the consumer was the borrower.

For example, in *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995), the Court held that TILA applied even in the absence of a valid, signed contract where:

> [the consumer and the dealership] had discussed financing the car at an 8.5 annual percentage rate along with insurance and warranty coverages and had arrived at an oral contract. The car and initial payments on it were delivered and accepted, and [the consumer] has continued to make monthly payments on her car faithfully. Furthermore, [the Dealership's] quick assignment of the retail installment contract to Mitsubishi Credit Corporation before [the consumer] even picked up the car is an act inconsistent with the dealership's argument that it did not enter into a contract for the sale of the car. [The Dealership's] argument, that the absence of [the consumer's] signature on either financing agreement indicates there was no consummation, is fully inconsistent with its conduct indicating the sale of the car at a specified interest rate, and is not well taken.[3] Thus, the conduct of the parties in this particular case, indicating intent and understanding, viewed in combination with the various writings between the parties, fully satisfies us that

10

the jurisdictional requirements of the Act and its implementing regulations have
been met.

*Id*. at 481.[6]

The facts in the case at bar are closely analogous. Specifically,

- Plaintiff has alleged that he "intended and attempted to enter into a finance agreement
  with the Dealership."  FAC at 18.

- Plaintiff further alleges the existence of a Vehicle Invoice dated July 1, 2016 (the date of
  the purchase) listing him and the co-borrower as buyers and that Vehicle Invoice
  unambiguously references the financing at issue, stating:

  > Payments
  >
  > 72 @ 691.74
  >
  > TOYOTA MOTOR CREDIT CORP.

*Id*. at ¶ 35 and  Exhibit A, hereto.[7]

- Plaintiff further alleges that, on July 1, 2016, at the Dealership's request, he signed a
  blank electronic signature pad several times and that these digital signatures were

---

[6] *Fairley* distinguished  *Jensen v. Ray Kim Ford, Inc.,* 920 F.2d 3 (7th Cir.1990) (cited at Def.
MOL at 5), noting that in *Jensen*, the consumer relied completely on a forged RIC for creation of
the consumer's purported obligation to pay and thus for his TILA claim.    65 F. 3d at 482, n.4.
In contrast, in both *Fairley* and the case at bar, the consumer relies on the broader transaction,
evidenced by multiple transactional documents and the parties' course of conduct, as the basis
for the obligation to pay and thus the existence of TILA obligations.  *Id.  Holt v. Ford Motor
Credit*, 2007 WL 2601083, *5 (cited at Def. MOL at 5) is distinguishable for similar reasons, as
the only basis for any agreement between the parties there -- other than an allegedly forged RIC -
- was the consumer's "hazy recollection of his conversation with [an unidentified dealership]
employee."
[7] As discussed at footnote 2 (supra), the Vehicle Invoice is discussed at FAC at ¶ 35 and
incorporated by reference.

subsequently applied by the dealership to a RIC that was then sent on to TMCC. Complaint at 20-22.

- The RIC later obtained from TMCC provides for 72 payments of $672.21 per month. ECF 25-5.

- The FAC further alleges that Mir S. made a down payment on the Vehicle" prior to the date the deal was consummated (FAC at ¶ 14), and that also prior to that date, he -- along with a co-borrower -- also filled out credit applications. *Id*. at 15.

- Prior to this litigation, Plaintiffs "repeatedly asked the Dealership to correct he RIC to list Mir S. as the borrower." *Id.* at 30.

- "The Dealership promised to do so, but failed to do so." *Id*. at 31.

- Mir S. continues to make regularly monthly payments of $672 per month for the Vehicle.

These facts. like the facts in *Fairley* create a fair inference (and more) that the parties's intent was to bind Mir S., not Mir T. to the transaction.

Nor does the Dealership even bother to content otherwise.  Indeed, the Dealership states that "[w]hile Lee's Motors believes that a valid contract exists for the vehicle, Mir S.'s refusal to allege such an agreement dooms his claims."  Def. MOL at 8.

But Mir S. does not "refuse[] to allege such an agreement."  To the contrary, he alleges that he has a contract and an invoice for the vehicle and that, with regard to the RIC, he is the properly listed borrower but that the Dealership while "promis[ing]" to "correct the RIC to list Mir S. as the borrower" has "failed to do so."  FAC at 30-31.

Relatedly, Defendant's nowhere deny that they made the wrong person the "borrower" on the RIC.  Rather, they appear to argue that this was an inadvertent mistake rather than a scheme,

claiming that knowingly substituting in Mir T. would have served no purpose and "was guaranteed to be discovered on the very first payment due date.".  Def. MOL at ¶ 6.

*Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1373 (S.D. Fla. 2009), relied upon by Defendant, is instructive.  In finding  no TILA liability, the Court noted that – in contrast to the facts at bar -- the consumer "was unaware of the transaction," it was clear that there was no "mutual assent," and "the contract was rescinded" by the Defendants pre-litigation.   None of these factors can be said to be in play in the instant litigation, where Mir S. was actively participating in the transaction, the conduct of the parties indicates mutual assent, the parties apparently both currently believe that Mir S. should be listed as the borrower, the contract has never been rescinded, even post-litigation, and Mir S. continues to make payments.

Similarly in *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 237 (E.D.N.Y. 2009) the Court honed in on the absence of the sorts of facts in play in the instant case in finding no ratification.

> In fact, several of the court decisions cited by Athan and Koukoulis—involving cases where forgery was alleged—explicitly noted in their rulings that the elements of ratification were not present in those cases. *See, e.g., Orlosky v. Empire Sec. Sys.,* 230 A.D.2d 401, 404, 657 N.Y.S.2d 840 (3d Dept 1997) ("plaintiffs made no payments ... or took any other action which could support an argument that they ratified the forged agreement or created a contract by conduct").)
>
> *Id.* at ¶ 237.  See also *Banaczyk v. 1425 Broadway, LLC*, 24 Misc. 3d 1213(A), 897

N.Y.S.2d 668 (Sup. Ct. 2009) (noting ratification exception).

Nor does the dealership's citation to *Barrier Sys., Inc. v. A.F.C. Enters, Inc*., 264 A.D. 2d 342 (2d Dept. 1999) help its cause.  In *Barrier Systems*, two companies were engaged in a dispute regarding the performance of certain construction equipment.  The Court held that the buyer's claims of fraud in the inducement were unavailing where, after disputing certain charges,

it had been supplied with replacement equipment that had the feature supposedly missing from the originally leased equipment, "entered into [a] lease modification agreement, made substantial payments thereunder, and continued to use the leased equipment". *Id.* at 433.

As the foregoing recitation suggests, the case at bar simply has nothing to do with the situation addressed in *Barrier Systems*.

*Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 366 (E.D.N.Y. 2012) is equally inapposite, dealing with whether a party seeking to rescind a contract on the basis of material misrepresentations can be deemed to have waived rescission by "continu[ing] to accept the benefits of the agreement or acted in some other fashion inconsistent with exercise of a right to rescind." Here, no party seeks to rescind the contract. To the contrary, the Defendant claims that the contract is valid and Mir S. agrees that he is obligated, has acted in all ways consistent with his and the dealer's view that he is obligated. Mir S. merely wants the contract (and thus the billing and credit reporting) to be corrected such that all reflect that he, rather than his son, is the borrower.

Nor does Mir S. even need to prove that all of the actions set forth herein that indicate the parties intent were technically sufficient to create a binding contract under New York law in order for TILA to apply. Rather, as both the 4th and 8th Circuit have held, in light of TILA's purpose of "protect[ing] customers before the execution of a credit agreement by requiring creditors to disclose the terms of the proposed agreement", "the ultimate nonenforceability of a credit agreement under state law should not be a defense to an action under the TILA for failure to disclose the information required by the act. *Dryden v. Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 646 (8th Cir. 1980); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (adopting *Dryden*).

14

### 2. Plaintiffs' TILA Claim Is A "Blank Contract" Claim, Not A Traditional "Forgery" Claim

Defendant's motion fails for an additional reason:  Defendant's fundamental premise is that Mir S.'s TILA claim is a traditional identity theft/forgery claim.  This is incorrect.

Rather, the allegation that Mir S. signed the RIC digitally without being shown its terms renders this case indistinguishable from the numerous cases in which Courts have found that having a consumer sign a retail instalment contract in blank violates TILA and goes to its core purpose.

As the Court held in *Lacey v. William Chrysler Plymouth Inc.*, 2004 WL 415972 (N.D. Ill. Feb. 23, 2004):

> More importantly, William Chrysler's conduct—asking Lacey to sign a blank contract with no disclosures—was far more egregious than simply failing to give the customer a duplicate copy of a contract that he admittedly read and understood, as in *Streit.* The purpose of the TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). To achieve this purpose, the Act requires creditors to disclose the details of a credit transaction to the consumer before the transaction is consummated. 15 U.S.C. § 1638(a). Far from a mere "technical violation" of the TILA, William Chrysler's action is a direct violation of the central provision of the Act and should not be excused because Lacey failed to fulfill her obligations under the contract. The court grants Lacey's motion for summary judgment as to Count III.
>
> The court must now turn to whether William Chevrolet made accurate TILA disclosures prior to or at the time of consummation. Plaintiffs provide sufficient evidence that William Chevrolet did not because plaintiffs were asked to sign the contracts in blank. On the other hand, William Chevrolet adamantly deny that the contracts were signed in blank and also provide sufficient evidence that the contracts were not signed in blank. Thus, there is an obvious genuine issue of material fact in dispute between the parties, namely whether William Chevrolet accurately set forth the mandatory TILA disclosures at the time of consummation, prior to or at the signing of the contracts.

*Fogle v. William Chevrolet/GEO, Inc.*, 2000 WL 1129983, at *5 (N.D. Ill. Aug. 9, 2000)

Likewise, in *Harris v. Castle Motor Sales, Inc.*, 2001 WL 477241, at *3 (N.D. Ill. May 7, 2001), the Court denied a Defendant's motion to dismiss where "Plaintiff allege[d] Defendant violated TILA by [*inter alia*]: causing Plaintiff to sign the retail installment contract in blank[.]"

In *Gray v. First Century Bank*, 547 F. Supp. 2d 815 (E.D. Tenn. 2008) the Court noted that "[i]f the documents were forged, the Truth in Lending disclosures would be inapplicable." but telling went on to state that --  but for being time barred -- TILA would have applied if the consumer "signed blank documents".  *Id*. at ¶ 824.

Indeed, any argument that a Dealership could avoid TILA liability by having a consumer sign a contract in blank (and then argue that no contract was formed as the material terms were not included in the retail instalment contract) would gut a primary purpose of TILA.  To wit, "[t]he purpose of the TILA is to protect customers before the execution of a credit agreement by requiring creditors to disclose the terms of the proposed agreement. *Dryden v. Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 646 (8th Cir. 1980) (citing, *inter alia*, 15 U.S.C. § 1601.

### C.  Defendant's Defenses To Plaintiff's State Law Claims Are Meritless

### 1.  New York Motor Vehicle Retail Installment Sales Act

The Dealership argues that Plaintiffs' NYMVRISA claim should be dismissed on the same grounds as Plaintiff's TILA claims.  Def. MOL at ¶ 5.  As set forth above, however, the Dealership's TILA arguments all fail.

### 2.  GBL § 349

The dealership argues that Plaintiffs' GBL § 349 claims should be dismissed because  "this matter is unique to the transaction at issue" and is therefore not consumer oriented.   Def. MOL at 7.  Specifically, Defendant argues that "including the wrong consumer's name" in the retail installment contract is not a regular practice.  *Id.*

16

Defendant misconstrues Plaintiff's GBL claim, which is aimed not at the substitution of Mir T. for Mir S. on the RIC, but rather the process of having consumer's sign electronic signature pads and inserting that signature onto documents not properly disclosed to the consumer, as well as the "insertion of additional fees into the RIC".  FAC at 89.

The FAC alleges that this conduct "is recurring and has a broad impact upon the public, or, in the alterative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large."  *Id.* at ¶ 91.

The FAC further states:  "[i]n this regard, it is notable that Mir T.'s prior transaction with the Dealership, likewise involved use of the electronic signature pad without the ability to review the loan terms prior to consummation".  Id. at ¶ 92.

These allegations are clearly sufficient.  Indeed, "[c]onsumer-oriented conduct" for purposes of GBL § 349 "does not require repetition or pattern of deceptive behavior" or "recurring conduct." *Oswego*, 85 N.Y.2d at 26.  Rather, a plaintiff need only prove that the misconduct was not a "single shot" transaction. *See Genesco Entertainment v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y. 1984).

Moreover, "[i]n New York, the requirement that defendants engage in consumer oriented conduct has been construed liberally." *Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015), *order corrected on denial of reconsideration*, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016).

Applying this standard, Courts routinely find allegations– like those here -- regarding a deceptive business practice undertaken in the ordinary course of selling and financing vehicles and capable of repetition, to be sufficient.

17

*Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519 (E.D.N.Y. 2006), an auto

fraud case, is instructive:

> Paragon argues however, that Diaz has failed to allege that the challenged practice
> was consumer oriented or that he suffered injury as a result of the deceptive act.
> However, where as here, the record demonstrates that the transactions involved
> standard documents routinely presented to similar customers, the plaintiff has
> made a threshold showing that the practice was consumer oriented. *Teller v. Bill
> Hayes, Ltd.,* 213 A.D.2d 141, 147–148, 630 N.Y.S.2d 769 (N.Y.App.Div.2d
> Dept.1995)("plaintiffs made the threshold showing of a consumer-oriented
> practice that "potentially affect[ed] similarly situated consumers" where "[t]he
> record indicate[d] that defendant Bank dealt with plaintiffs' representative as any
> customer entering the bank to open a savings account, furnishing the [plaintiffs'
> representative] with standard documents presented to customers upon the opening
> of accounts" ") (citations omitted).

*Id*. at ¶ 43.

Likewise, in *Erdman v. HSBC Auto Fin.*, 2011 WL 3420849 (W.D.N.Y. Aug. 4, 2011),

the Court stated:

> HSBC argues that GBL § 349 does not apply because the conduct involved a
> single private transaction and is therefore not "consumer-oriented." However,
> such a practice, if factual, could potentially affect similarly situated customers and
> should therefore not be dismissed on these grounds. *See Oswego Laborers' Local
> 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26–27, 623
> N.Y.S.2d 529, 647 N.E.2d 741(1995) (observing that if a practice could affect
> other customers, it is not a unique, "single-shot" transaction).

*Id*. at *4

Similarly, in *Maas v. Spencer Leasing Corp.*, No. 12-CV-02951 ADS AKT, 2013 WL

5308859, at *13 (E.D.N.Y. Sept. 18, 2013) the Court held:

> Here, Plaintiff has set forth a valid cause of action under GBL § 349. First,
> Plaintiff negotiated the purchase of the Vehicle from Defendant Spencer Leasing
> and Defendant subsequently issued to Plaintiff the Vehicle Invoice, the Second
> Vehicle Invoice, and the RIC, all of which constitute acts or practices which are
> "consumer-oriented." *See Spagnola,* 574 F.3d at 74. The automotive sales
> transaction at issue here was inherently "consumer-oriented" and "not unique to
> these two parties." *See Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d
> 741. By way of contrast, the Court of Appeals in *Genesco Entertainment v.*

*Koch,* 593 F.Supp. 743, 752 (1984) held that the negotiation for the rental of Shea Stadium was a "single shot transaction," not a typical consumer transaction covered by Section 349.

*Id.* at *13.

In sum, Plaintiffs' allegations are clearly sufficient under the case law applying GBL § 349 to consumer vehicle purchasing and financing.

### 3.   Fraud

Defendant's attack on Plaintiffs' fraud claim also fails.  First, Defendant claims that the claim should be dismissed because "obtaining Mir S.'s signature for use on a RIC listing Mir T. as the buyer" was "a scheme with ZERO purpose, ZERO chance of success and ZERO benefit to Lee's Motor's."  Def. MOL at ¶ 6.  These statements are demonstrably false and, in any event, cannot provide a basis for dismissal at the 12(b)(6) state.  To wit, the purpose and benefit to Lee's Motors was the selling a vehicle for a profit by means of a finance agreement that was immediately signed over to TMCC.  Moreover, in terms of the "chance of success":  even after extended litigation, Plaintiffs have been unable to convince Defendants to correct the RIC such that Mir S. is listed as buyer.

Nor are Plaintiffs' allegations based solely on the dealership having inserted Mir T. as a borrower.  Rather, Plaintiff also targets Using the electronic signature pad procedure described above to insert an additional $2,500 charge into the RIC without Plaintiffs knowledge."  FAC at 12.

In any event, the elements of fraud are, notwithstanding Defendant's characterizations, all adequately plead.

For example, with regard to justifiable reliance, the FAC states:

101.    Plaintiffs believed and justifiably relied upon the Dealership's
        representations, *i.e.* Mir S. had no reason to know or believe that Mir T.

19

was being substituted into the transaction documents for Mir S. and Mir
T., nor that additional fees never previously discussed would be inserted
into the RIC.

102.    Moreover, Mir S. believed that the Dealership would correct the
misstatement as it promised to do.

103.    Had the Dealership been truthful about the sales terms and the contents of
the RIC and had the Dealership not made these fraudulent
misrepresentations, neither Mir S. nor Mir T. would have gone forward
with the transaction.

FAC at ¶ 101-103.

In sum, the Dealership's contentions with regard to Plaintiff's state law claims are

without merit.

### D.  The Dealership's Joinder Argument is Meritless

The Dealership claims, without citation to caselaw, that Plaintiff's claims must be

dismissed for purported failure to name co-borrower, Michael Pellet as a party.  Defendant

claims Mr. Pellet is an indispensable party pursuant to Fed. R. Civ. P. 19(a)(1)(A) and (B).  Def.

MOL at 9.

As an initial matter, dismissal could only conceivably be warranted if Mr. Pellet was an

indispensable party *but could not feasibly be joined*.  See, e.g. "Dismissal under Rule 19(b) is

called for only when joinder is not feasible." *Board of Managers of Charles House

Condominium v. Infinity Corp.,* 825 F.Supp. 597, 607 (S.D.N.Y.1993).

Defendant has not stated any reason (e.g. destruction of diversity jurisdiction) that Mr.

Pellet could not be joined, and its motion to dismiss under Rule 19 must therefore be denied.

Nor should joinder even be required via amendment, as Defendant has failed to carry its

burden to show that Mr. Pellet is indispensable.

First, Fed. R. 19(a)(1)(A) cannot plausibly be a basis for Defendants' position because it is not the case that "in [Mr. Pellet's] absence, the court cannot accord complete relief among existing parties."

Rather all of the relief sought by Plaintiffs herein, *i.e.* money damages, attorney's fees, costs, and declaratory judgment that Defendants broke the law, can be awarded.  Defendant does not even bother to claim otherwise.  See, e.g. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) ("A party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded *among those already parties.*' Visa's absence will not prevent the district court from granting complete relief between MasterCard and FIFA.").  It is important to note in this regard that Plaintiffs do not seek to rescind the contract at issue.

Nor is it true that the litigation would "impair or impede" Mr. Pellet's "ability to protect" any interest he has related to the "subject of the litigation".  Fed. R. Civ. P. 19(a)(1)(B)(i).  For example,  whether Plaintiffs' win or lose, Mr. Pellet will remain a borrower.

Finally, with regard to the Dealership's fear that it might incur "double, multiple, or otherwise inconsistent obligations" (Fed. R. Civ. P. 19(a)(1)(B)(ii)), the Dealership provides no reason why this would be the case.  Nor do the Court's findings with regard to whether Mir S. or Mir T. was entitled to and was provided with accurate loan disclosures, etc. impact any claim Mr. Pellet might have, as these findings do not say much about whether Mr. Pellet was provided with adequate, timely loan disclosures.

The Dealership argues instead that Mr. Pellet's status as a party to the contract, per se, requires joinder.  Def. MOL at 9.

This is clearly incorrect.  Indeed, virtually identical arguments were raised and rejected in

*Koontz v. Wells Fargo, N.A.*, 2011 WL 2020624 (S.D.W. Va. May 24, 2011).

> There is also no indication that Mr. Richmond has "claim[ed] an interest" in the "subject of the action," apart from simply co-signing the underlying loan. Further, it is unclear that Mr. Richmond's interests will be impaired by proceeding without him. Simply put, there is no indication that Mr. Richmond possesses any claims that would be impaired or impeded if he is not forced to join this suit. The complaint mentions Mr. Richmond only in detailing the execution of the loan agreement, omitting any reference to him in the breach of contract and unconscionability counts. Likewise, in its motion, Wells Fargo asserts only that Mr. Richmond is a co-signer and joint obligor to the loan, failing to explain what interest in this case Mr. Richmond possesses or has claimed. Similarly, Wells Fargo fails to explain how multiple and inconsistent obligations may arise from awarding Plaintiff the damages she seeks in this case. *See, e.g., Delgado v. Plaza Las Americanas, Inc.,* 139 F.3d 1, 3 (1st Cir.1998) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."). Wells Fargo has failed to carry its burden of demonstrating that Mr. Richmond is a required party to this action pursuant to Fed.R.Civ.P. 19(a)(1).

> *Id.* at *2.

The same reasons underlying rejection of the Defendant's Rule 19 argument in *Koontz*,

warrant rejection of that same argument here.

*[continued on next page]*

22

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's motion be

denied in its entirety.

March 5, 2018

Respectfully submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, NY 10004
T. 212.500.6114
F. 646.612.7996
dschlanger@kakalec-schlanger.com

Brian K. Herrington (*pro hac vice* in
process) (Of counsel)
Herrington Law, PA
1520 N. State Street
Jackson, MS 39202
T:  601.235.9943
F:  601.235.9947
brian@herringtonlawpa.com