```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MIR T. ISLAM and MIR S. ISLAM,                  :
                                                :
                        Plaintiffs,             :
                                                :           MEMORANDUM & ORDER
                -against-                       :           17-cv-03955 (DLI)(VMS)
                                                :
LEE'S MOTORS, INC. and TOYOTA MOTOR             :
CREDIT CORPORATION,                             :
                                                :
                        Defendants.             :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, Chief United States District Judge:**

On June 30, 2017, Mir T. Islam ("Mir T.") and his father, Mir S. Islam ("Mir S.," collectively, "Plaintiffs"), filed this action against Defendants Lee's Motors, Inc. ("Lee's Motors") and Toyota Motor Credit Corporation ("TMCC," collectively, "Defendants") for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), the New York Motor Vehicle Retail Instalment Sales Act, N.Y.P.P.L. § 301 *et seq*. ("MVRISA"), the New York General Business Law § 349 ("GBL"), and for common law fraud. (Am. Compl., Docket Entry No. 19).

Mir S. and Mir T. are a father and son, respectively, who, in 2016, had several interactions with Defendants. Plaintiffs allege that, in connection with Mir S.'s purchase and financing of a vehicle, Defendants failed to provide required credit disclosures, engaged in deceptive business practices, and willfully defrauded Plaintiffs.

Before the Court is Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mem., Docket Entry No. 25). Defendants argue that Plaintiffs' TILA claims fail because Plaintiffs do not allege that they signed a retail installment contract that would trigger TILA protections. Defendants further argue that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims or otherwise dismiss them on the merits. For the reasons set forth below, Defendants' motion is

granted in part and denied in part.

## **BACKGROUND**[1]

On or about May 24, 2016, Mir T. entered into a motor vehicle lease agreement with Lee's Motors. (Am. Compl. ¶ 13). While Mir T.'s lease is not at issue in this litigation, it is relevant to show that Lee's Motors had access to his information that later appeared in documents related to Mir S.'s transaction. (*Id.*). In connection with a separate transaction regarding a different vehicle, Mir T.'s father, Mir S., visited Lee's Motors at least twice in late May or early June of 2016. (*See Id.* ¶¶ 9, 14-15). During those visits, Mir S. made a down payment on a new 2016 Toyota Tundra (the "Vehicle") and filled out a credit application. (*Id.* ¶¶ 14-15). Also in late May or early June of 2016, Michael Pellet, a friend of Mir S.'s, visited Lee's Motors to fill out a credit application so that he could serve as a guarantor for Mir S. (*Id.* ¶ 17).

On July 1, 2016, Mir S. made another visit to the dealership, intending to enter into a financing agreement with Lee's Motors in connection with the purchase of the Vehicle. (*Id.* ¶ 18). At Lee's Motors's request, Mir S. signed a blank electronic signature pad several times during the visit. (*Id.* ¶¶ 20-21). At no point during the signing did Lee's Motors disclose the loan terms to Mir S. in writing. (*Id.* ¶ 19).

Plaintiffs allege that, without their knowledge or approval, Lee's Motors applied Mir S.'s digital signature to a Retail Instalment Contract ("RIC"), and assigned it to TMCC. (*Id.* ¶ 22; Docket Entry No. 14-5). Lee's Motors did not provide the RIC to Plaintiffs at the time of signing. (Am. Compl. ¶ 23). Mir S. later received an invoice from TMCC and learned that it incorrectly lists his son, Mir T., as the borrower. (*Id.* ¶ 30). Plaintiffs subsequently obtained a copy of the

---

[1]     The facts herein are taken from the Amended Complaint and are accepted as true for the purposes of this motion.

RIC from TMCC and discovered that it incorrectly lists Mr. Pellet as the primary "buyer," appears to have been signed by Mr. Pellet on July 1, 2016, and incorrectly lists Mir T. as the co-buyer. (Ex. 5 to Defs.' Mem. at 1-2, 4, 6, Docket Entry No. 25-5). Finally, Mir S. discovered that the RIC contains an additional $2,500 charge for "optional mechanical breakdown protection," which previously was not disclosed to Mir. S. (Am. Compl. ¶ 34).

Plaintiffs contend that Mr. Pellet's signature on the RIC was forged because he did not visit Lee's Motors on July 1, 2016, and Mr. Pellet did not sign any document other than the credit application he filled out during his first and only visit to Lee's Motors in late May or early June. (*Id.* ¶¶ 26-29). Mir T. also was not present at Lee's Motors on July 1, 2016, never agreed to be part of the transaction at issue in this litigation, nor did Mir S. ever attempt to involve Mir T. in the transaction. (*Id.* ¶ 24). Furthermore, Plaintiffs did not know that the $2,500 fee for "optional mechanical breakdown protection" was inserted in the RIC. (*Id.* ¶ 34).

Plaintiffs asked Lee's Motors to correct the RIC to show Mir S. as the borrower. (*Id.* ¶ 30). Lee's Motors promised to make the correction, but failed to do so. (*Id.* ¶ 31). Upon a similar request by Plaintiffs, TMCC refused to make the correction, and has demanded monthly loan payments from Mir T. (*Id.* ¶ 48). Even though Defendants did not list the loan in Mir S.'s name, Mir S. continued to make his monthly payments of $672. (*Id.* ¶ 51).

On or about July 29, 2016, Mr. Pellet informed TMCC that he was not the owner of the Vehicle, even though he was receiving monthly bills, and that he only filled out a credit application to serve as a guarantor/co-signer. (*Id.* ¶ 32).

The Amended Complaint discusses other documents in connection with this litigation. The "Vehicle Invoice" for the transaction, dated July 1, 2016, lists Mir S. and Mr. Pellet as the buyers. (*Id.* ¶ 35). A "Contract" dated June 28, 2016, lists only Mir S. as the buyer. (*Id.* ¶¶ 36-37; Ex. 1

3

to Defs.' Mem. at 1, Docket Entry No. 14-4). Defendants also produced a "Credit Application" purportedly signed by Mir S. and Mr. Pellet on June 16, 2016. (Am. Compl. ¶ 39; Ex. 6 to Defs.' Mem. at 1-2, Docket Entry No. 14-6). Plaintiffs claim that the Credit Application was forged. (Am. Compl. ¶¶ 40-47).

Plaintiffs allege that, because of Defendants' misconduct, Mir T. has suffered a variety of credit related harms, including damage to his credit score. (*Id.* ¶ 49). Mir S. has been denied the opportunity to use his monthly payments to improve his credit and was forced to involve his son in his financial affairs, which Mir S. finds highly objectionable. (*Id.* ¶ 51). Plaintiffs also allege they suffer from emotional distress, aggravation, stress, and other pain and suffering. (*Id.* ¶ 52).

## DISCUSSION

### I. Legal Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can

be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II. Analysis

### A. The TILA Claims

"The main purpose of TILA is to inform consumers of the true cost of credit." *Bonanno v. Sec. Ail. Mortgage Co.*, 2010 WL 2134155, at *5 (E.D.N.Y. May 26, 2010) (citing 15 U.S.C. §§ 1601 *et seq.*). To that end, TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631-1632, 1635, 1638). Section 1638 lists the substantive requirements of a creditor's disclosures, as well as the required form and timing of the disclosures. *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 865 (6th Cir. 2003) (citing 15 U.S.C. § 1638).

TILA and Regulation Z, 12 C.F.R. § 226.18, presuppose a valid contract between a creditor and consumer to trigger a creditor's disclosure obligations. Indeed, the specific provisions on which Plaintiffs rely are premised on a "consummation of [a] transaction." *See* 15 U.S.C. § 1638;

5

12 C.F.R. § 226.18. Congress did not define the term "consummation of the transaction." *Murphy v. Empire of Am., FSA*, 746 F.2d 931, 933 (2d Cir. 1984). However, "Congress has specifically designated the [Federal Reserve Board] and staff as the primary source for interpretation and application of truth-in-lending law." *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 238 (2004). Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). Under Regulation Z, a credit transaction is consummated at "the time that a consumer becomes contractually obligated on a credit transaction." *Smith v. Wells Fargo Bank, N.A.*, 666 F. App'x 84, 86 (2d Cir. 2016) (quoting Official Staff Comment 12 C.F.R. § 226.2(a)(13)). Whether a consumer becomes contractually bound by a credit transaction is a question of state law, *Id.*, and, under New York law, a forged signature renders a contract void *ab initio*, *Orlosky v. Empire Sec. Sys., Inc.,* 230 A.D.2d 401, 403 (3d Dep't 1997).[2]

The Amended Complaint alleges that Defendants violated § 1638(a) and (b), and Regulation Z § 226.18 by failing to disclose the costs of credit (including the true cash price, APR, amount financed, and finance charge) and monthly payment amounts in a clear and timely manner. (*See* Am. Compl. ¶¶ 53-71). Because the analysis of Plaintiffs' TILA claims differs depending on which Plaintiff is asserting rights thereunder, their claims are addressed in turn.

---

[2] The RIC provides that it is governed by the laws of the State of New York. (Ex. 5 to Defs.' Mem. at 6). There is no dispute that the events and actions underlying this action took place in New York.

### 1. Mir T.'s TILA Claim

Mir T.'s TILA claim must be dismissed because he is not a party to the RIC. He was not involved in any aspect of the Vehicle's purchase and did not sign the RIC. Although Mir T.'s name is listed on the RIC as the co-buyer, Mir S.'s signature appears on the RIC instead. (Ex. 5 to Def. Mem at 2, 4, 7-9). Plaintiffs allege that Lee's Motors obtained the signatures when Mir S. signed a blank electronic signature pad and digitally applied the signatures to the RIC without authorization. Accordingly, the facts suggest that the signatures were forged, rendering the RIC void under New York law. *See Orlosky*, 230 A.D.2d at 403-04 (holding that a forged RIC cannot form the basis for TILA protection). As no valid contractual relationship relevant to this litigation existed between Mir T. and Defendants, Mir T. fails to satisfy the threshold requirement for his TILA claim.

Case law from other circuits and New York state also support this conclusion. *See Rosa v. Cutter Pontiac Buick GMC of Waipahu, Inc.*, 255 F. App'x 281, 282-83 (9th Cir. 2007) (holding that an automobile dealer is not liable for alleged violations of TILA where consumers never signed a credit sales contract and, thus, never consummated a credit transaction for the purchase of a vehicle); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 733-34 (6th Cir. 2007) (holding that a wife's fraudulent conduct in obtaining a credit card in both her and her husband's name did not render the creditor liable for failing to send the husband the required TILA disclosures); *Holt v. Ford Motor Credit Co.*, 2007 WL 2601083, at *5 (N.D. Ind. Sept. 7, 2007), *aff'd*, 275 F. App'x 553 (7th Cir. 2008) (holding that a forged contract is void and creates no TILA obligation on the creditor where a dealership allegedly forged a signature and changed the price on a RIC); *Anthony v. Anthony*, 642 F. Supp.2d 1366, 1373 (S.D. Fla. 2009) (denying TILA claim based on forged mortgage documents); *Monogram Credit Card Bank of Georgia v. Morris*, 2002 WL 31360695,

at *6-7 (N.Y. Civ. Ct. May 10, 2002) (dismissing TILA claim absent a valid contract where an imposter applied for a credit card using the identity of the claimant).

Plaintiffs argue that, nonetheless, Mir T. should be considered an "obligor" under TILA because, as the court noted in *Belmont v. Assocs. Nat. Bank (Delaware)*, "the term obligor[s] must necessarily be construed to include those whom the creditor claims are obligors, as well as individuals who are in fact obligors in the contract law sense." *Belmont v. Assocs. Nat. Bank (Delaware)*, 119 F. Supp.2d 149, 164 (E.D.N.Y. 2000). However, Plaintiffs' reliance on *Belmont* is misplaced. In *Belmont*, the debtor asserted a "wrong person" billing error under Section 1666, stating that his name improperly remained on a credit account he once held with his son. *See Id.* at 158. The court rejected the bank's argument that, if the debtor was the "wrong person" on the account, he had no standing to bring a TILA claim because he was not an obligor. *Id.* at 159. In doing so, the Court reasoned that § 1666 (dealing with "wrong person" billing errors) must cover "those whom the creditor claims are obligors" because

> Otherwise, there would be a lacuna in the statute, and an important area in the statute's remedial scheme would be left unprotected. A consumer who believes that he is not obligated under a credit account, and promptly notifies the creditor of the mistake through a proper notice of billing error, deserves the broad protections that Congress intended under the Act.

*Id.* at 164. In other words, a broad interpretation of the term "obligor" was necessary because § 1666 expressly regulates billing errors that fall outside of contractual obligations. *See* 15 U.S.C. § 1666(b) (defining billing error to include an extension of credit not made to an obligor and goods or services not accepted by an obligor).

Plaintiffs here sue under § 1638, which regulates a creditor's disclosure obligations. The rationale of *Belmont*, that allows claimants to challenge billing errors based on mistaken identity, does not apply to TILA's disclosure regime, and, therefore, no similar broadening of the definition

8

of "obligor" is warranted. The other cases that Plaintiffs cite rely on the rationale of *Belmont*, and, therefore, are distinguishable. *See Stafford v. Cross Country Bank*, 262 F. Supp.2d 776, 789-91 (W.D. Ky. 2003); *Carter v. Atchley Ford, Inc.*, 2002 WL 802682, at *3-4 (D. Neb. Feb. 20, 2002). Accordingly, Mir T.'s TILA claim is dismissed.

### 2. Mir S.'s TILA Claim

Mir S.'s TILA claim survives because the Amended Complaint states facts sufficient to support the inference that Mir S. and Defendants reached an agreement regarding the RIC. Under New York law, "[i]n determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look [] to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Minelli Const. Co. v. Volmar Const., Inc.*, 82 A.D.3d 720, 721 (2011).

Here, Plaintiffs allege facts sufficient to support a plausible inference that Mir S. and Defendants reached an agreement on the RIC or otherwise ratified the agreement. Mir S. "intended and attempted to enter into a finance agreement with [Lee's Motors]." (Am. Compl. ¶ 18). He made a down payment and filled out a credit application. Rather than attempting to rescind the contract, Mir S. "repeatedly asked [Lee's Motors] to correct the RIC to list Mir S. as the borrower." (*Id.* ¶ 30). Despite the allegedly fraudulent inclusion of "optional mechanical breakdown protection," (*Id.* ¶ 35), Mir S. continues to make monthly payments of $672, the amount listed in the RIC, and maintains possession of the Vehicle.

Furthermore, the Amended Complaint describes actions by Lee's Motors's that are consistent with an agreement. Lee's Motors assigned the RIC to TMCC and acknowledged the existence of an agreement by promising to correct the RIC to list Mir S. as the borrower. The

9

Vehicle Invoice and the Contract list Mir S. as the buyer.[3]

Finding no Second Circuit decision directly on point, the Court finds the Fifth Circuit's decision in *Fairley* instructive. *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995). The Fifth Circuit held that the TILA applies absent a signed contract where parties had reached an oral agreement on financing terms for a car; the creditor quickly assigned the contract to a third party; and the car and initial payments were delivered and accepted despite inconsistent terms on an allegedly forged contract. *See Id.* at 480-81. Accordingly, Plaintiffs' TILA claim with respect to Mir S. sufficiently states a claim and Defendants' motion is denied as to this claim.

B. **The State Law Claims**

Defendants argue that the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims. A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). State and federal claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). Because Mir S.'s TILA claim survives, and the remaining state law claims arise out of the same set of transactions that form the basis of the federal claim,

---

[3] Defendants contend that neither the Vehicle Invoice nor the Contract can give rise to TILA claims because they are barred by the statute of limitations. But the documents are not purported to serve as independent bases for TILA claims. Rather, they serve merely as evidence of Defendants' intent to enter into the RIC.

the Court will retain jurisdiction over the state law claims that remain.

### 1. The MVRISA Claims

Plaintiffs allege that Defendants violated the MVRISA. The New York legislature enacted the MVRISA to regulate the sale of cars on credit. *See* N.Y. Pers. Prop. Law § 301. The MVRISA sets forth detailed requirements governing the form and content of retail installment sales contracts between a seller and a buyer. *See Id.* § 302. A buyer is defined as "a person who buys a motor vehicle from a retail seller and who executes a retail instalment contract in connection therewith." *Id.* § 301.

Similar to his federal claim, Mir T.'s MVRISA claim fails because he was not the "buyer" of the Vehicle. His only alleged involvement with the purchase of the Vehicle is that: (1) his name was listed wrongfully as the borrower on an invoice and as the co-buyer on the RIC; (2) his personal information was included wrongfully on a "Credit Application"; and (3) TMCC has demanded monthly loan payments from him. Plaintiffs do not dispute the prior transaction that Mir T. executed with Lee's Motors, and deny that Mir T. ever intended to purchase the Vehicle or execute the RIC. The plain language of the statute suggests that it was intended to protect those who willingly buy a motor vehicle and execute a retail installment contract. *See* N.Y. Pers. Prop. Law § 301. Mir T. falls outside the purview of the statute. Accordingly, his MVRISA claim is dismissed.

Unlike Mir T., Mir S. may be considered a buyer for purposes of the statute. He visited Lee's Motors to purchase a vehicle, made a down payment, filled out a credit application, intended and attempted to enter into a finance agreement with Lee's Motors, signed an electronic signature pad, has not sought to rescind the RIC, and has made monthly payments on the vehicle. The

Amended Complaint alleges that the Vehicle Invoice for the transaction dated July 1, 2016, and the Contract dated June 28, 2016, "correctly" list Mir S. as the buyer. (Am. Compl. ¶ 35-37).

The Amended Complaint alleges facts sufficient to state a claim under the relevant provisions of § 302. Lee's Motors did not deliver the RIC to Mir S. The RIC contains the names of Mr. Pellet and Mir T., and not of Mir S. As discussed previously, the Amended Complaint sufficiently states that Defendant violated certain TILA provisions. Mir S. signed an electronic signature pad that did not contain any loan contract language or loan terms. Accordingly, Defendants' motion to dismiss is denied with regard to Mir S.'s MVRISA claim.

### 2. The New York General Business Law Claims

Plaintiffs allege a claim under the New York General Business Law ("GBL"). The GBL makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state . . ." N.Y. Gen. Bus. Law § 349(a). To support a claim under the law, a plaintiff must prove that: (1) the challenged act or practice was consumer-oriented; (2) the act was misleading in a material way; and (3) the plaintiff suffered injury as a result of the deceptive act. *Id.* § 349. A plaintiff is not required to allege that the conduct complained of was repeated, but must show that the acts or practices "have a broader impact on consumer at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). "Private contract disputes, unique to the parties, [] would not fall within the ambit of the statute." *Id.*

Here, the acts challenged by Plaintiffs include the "electronic signature pad procedure employed with regard to Mir S., the forging of certain signatures, and the insertion of additional fees into the RIC." (Am. Compl. ¶ 89). The only support that Plaintiffs provide in alleging that these acts are consumer oriented is that Mir T.'s prior transaction with Lee's Motors also "involved

use of the electronic signature pad without the ability to review the loan terms." (Am. Compl. ¶ 92). As alleged, the challenged conduct is not repeated, but rather is pled as part of a single scheme deployed against Plaintiffs since Lee's Motors allegedly obtained Mir T.'s personal information during his prior transaction. Even if the acts were separate and repeated, Plaintiffs merely allege the recurring nature of the acts and fail to provide any support that Defendants' conduct would affect a broader set of consumers.

These acts are essentially of the same nature as those at issue in *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014). In *Crawford*, the borrower's allegations that lenders obtained signatures under false pretenses, created mortgages through forgery, and imposed exorbitant closing costs without properly informing consumers were insufficient to support a claim under the GBL, absent allegations that the acts were committed against consumers in general or against anyone other than borrower. *Id.* at 490. Accordingly, Plaintiffs' GBL claim is dismissed.

### 3. The Fraud Claims

The Amended Complaint alleges that Defendants defrauded Plaintiffs "by obtaining Mir S.'s signature for use on a RIC listing Mir T. as the buyer, using the electronic signature pad procedure [] to insert an additional $2,500 charge into the RIC without Plaintiffs' knowledge, and forging certain signatures." (Am. Compl. ¶ 98).

Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). In order to plead fraud properly, a plaintiff must "assert facts that plausibly support the inference of fraud." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013). In addition to the facial plausibility standard of Rule 12(b)(6), Plaintiffs must satisfy

13

the heightened pleading standard set forth in Rule 9(b). *Loreley*, 797 F.3d at 171. A complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Finally, although mental state may be pled "generally," Plaintiffs nonetheless must allege facts "that give rise to a strong inference of fraudulent intent." *Id.* (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)). An inference is "strong" if it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Loreley*, 797 F.3d at 176–77 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

Defendants challenge the scienter element by contending that using Mir S.'s signature on the RIC, which listed Mir T. as the buyer, was "a scheme with ZERO purpose, ZERO chance of success and ZERO benefit to Lee's Motor's." (Defs.' Mem. at 6). Plaintiffs, on the other hand, contend that by doing so, Lee's Motors profited from the sale of the Vehicle and the assignment of the RIC to TMCC. But there are no facts to suggest that Lee's Motors would not have realized the same profit and assigned the RIC in a timely manner had Lee's Motors used Mir S.'s name on the RIC. Given that Mir T. and Mir S. share the same first and last name, an opposing inference that Lee's Motors mistakenly switched the names is more compelling.

However, there is a strong inference of fraudulent intent behind the insertion of the additional $2,500 charge into the RIC without Plaintiffs' knowledge. The Amended Complaint alleges that Mir S. did not have an opportunity to review the loan terms prior to the financing and was asked to sign a blank electronic signature pad. (Am. Compl. ¶¶ 19-20). Such a scheme would have a high chance of success and confer significant benefits to Defendants.

14

Defendants' fraudulent intent behind the insertion of additional fees could not have been directed towards Mir T. As discussed in connection with the TILA claims, Defendants intended to enter into the RIC with Mir S. only. Moreover, the Amended Complaint itself fails to allege any facts sufficient to give rise to a strong inference of fraudulent intent specifically towards Mir T. (*See Id.* ¶¶ 97-106). Accordingly, Mir T.'s fraud claim is dismissed.

Although Defendants mistakenly listed Mir T. as the buyer, for purposes of this motion, the Court finds that they did intend to impose the additional fees on Mir S. As for Mir S., the other elements of fraud also are alleged sufficiently in the Amended Complaint: (1) Lee's Motors obtained Mir S.'s signature on an electronic signature pad without disclosing loan terms at the dealership on July 1, 2016; (2) Lee's Motors did not otherwise inform Mir S. of the additional charge; (3) Lee's Motors produced the RIC that contained the signature and the additional charge to which Mir S. did not agree; (4) Mir S. had no reason to know or believe that additional fees not previously discussed would be inserted into the RIC; (5) Mir S. believed that Lee's Motors would correct the misstatement as it promised to do; (6) TMCC refused to correct the mistake; and (7) Mir S. continued to make monthly payments that included the additional charge. Accordingly, Defendants' motion to dismiss is denied with respect to Mir S.'s fraud claim.

### C. Necessary Joinder

Defendants contend, without any authority, that this action must be dismissed for failure to name an indispensable party, Mr. Pellet. Dismissal pursuant to Rule 19(b) of the Federal Rules of Civil Procedure requires "a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons." *Viacom Int'l, Inc. v.*

*Kearney*, 212 F.3d 721, 725 (2d Cir. 2000) (quoting Fed. R. Civ. P. 19(b)). Rule 19(a) provides that a party is necessary where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). The party moving for compulsory joinder has the burden of showing that joinder is appropriate. *Edrich v. Festinger*, 2017 WL 3575238, at *4 (E.D.N.Y. Aug. 17, 2017).

Defendants do not specify reasons for concluding that Mr. Pellet is a necessary party other than that the allegations involve him generally; he signed the credit application; and the RIC purports him to be the primary buyer. Plaintiffs seek, *inter alia*, monetary damages, attorney's fees, a declaratory judgment that Defendants engaged in unlawful conduct, a court order barring recovery of any charges under the RIC and disgorging all payments made to date. However, Plaintiffs do not seek to rescind the contract to which Mr. Pellet is a party. Therefore, complete relief can be accorded to Plaintiffs without the presence of Mr. Pellet. Additionally, Mr. Pellet will not be adversely affected by the outcome of this case. On the contrary, Pellet expressed his desire to be relieved of his obligations as an owner of the Vehicle under the RIC, and Plaintiffs seek to prove that Mir S., not Mr. Pellet, is the primary buyer and the owner of the Vehicle. There is no evidence that Plaintiffs will not represent Mr. Pellet's interests adequately. Defendants fail to meet their burden of proving that the joinder is appropriate. Accordingly, Defendants' motion to dismiss on the basis of necessary joinder is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion is granted in part and denied in part. Accordingly, Mir T.'s claims are dismissed and the motion is denied as to Mir S.'s claims and as to improper joinder.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2018

/s/  
DORA L. IRIZARRY  
Chief Judge